IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| THE COMPASS GROUP, INC. d/b/a FRANK PISCH & ASSOCIATES, INC., ) ) ) ) | |
| Plaintiff, ) ) | |
| v.   ) ) | No.  08-3062 |
| KOREAN WAR VETERANS NATIONAL MUSEUM AND LIBRARY, ) ) ) ) | |
| Defendant.   ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This cause is before the Court on Defendant Korean War Veterans National Museum and Library's Motion to Dismiss Plaintiff's Complaint (d/e 5). Plaintiff, The Compass Group, Inc. d/b/a Frank Pisch & Associates, Inc., filed a Response to Defendant's Motion to Dismiss (d/e 6). For the reasons stated below, the Motion to Dismiss is denied.

## FACTS

According to the Complaint (d/e 1), Plaintiff is a Virginia corporation,

licensed to do business in Illinois, but with its principal place of business in Virginia.[1] Plaintiff is engaged in the business of providing fund-raising consulting services to non-profit corporations. Defendant is a not-for-profit corporation registered in the State of Illinois with its principal place of business in Springfield, Illinois. Defendant is attempting to establish a museum and library dedicated to the Korean War.

On or about August 26, 2006, the parties signed a document (the Agreement) in which Plaintiff agreed to conduct a 15 million dollar capital campaign from September 1, 2006, to August 30, 2010, for the construction of the museum. In consideration, Defendant agreed to pay a total of $1,440,000.00 over the 48-month period. Specifically, the Agreement states:

> The Korean War Veterans National Museum and Library desires to retain The Compass Group to direct the conduct of a $15,000,000 capital campaign in support of the construction of a museum.
>
> The Compass Group team will consist of Mr. Frank Pisch, Chairman & CEO, Mr. Robert Bull, Senior Vice President and other specialists as appropriate.
>
> The Compass Group agrees to provide these services to the Korean War Veterans National Museum and Library for a

---

[1] Unless otherwise stated, all facts are taken from the Complaint.

2

> period of forty-eight (48) months, beginning September 1, 2006 and ending August 30, 2010.
>
> . . . .
>
> The fee for these services is thirty thousand dollars ($30,000) per month for a total amount to be paid by the Korean War Veterans National Museum and Library to the Compass Group of one million four hundred forty thousand dollars ($1,440,000).

Complaint, Exhibit A, Agreement ¶ 1-3, 5.  Yet, the Agreement also provides:

> Decisions in all matters of campaign strategy will be made jointly by the Korean War Veterans National Museum and Library and The Compass Group, however the Korean War Veterans National Museum and Library will have control and approval over the prospects to be solicited as well as the content and volume of any solicitation.

Id. ¶ 4.

On February 29, 2008, Plaintiff filed the Complaint, which alleges breach of contract.  Plaintiff alleges that it has performed all conditions required of it by the Agreement and that Defendant breached the Agreement by failing to make its monthly payments.  Plaintiff now seeks damages in excess of $280,000.00.

Defendant has moved to dismiss.  Defendant argues that the Agreement is not a contract, and therefore Plaintiff cannot state a claim for

3

breach of contract. Defendant contends that the parties failed to reach a mutual understanding of the obligations of the parties, namely the duties of the Plaintiff, and that the Agreement thus lacks a necessary element of a valid contract. Motion to Dismiss ¶ 2. Defendant also argues that the Agreement violates the Illinois statute of frauds. Id. ¶ 1.

## ANALYSIS

Federal Rule of Civil Procedure 12(b)(6) allows dismissal where a complaint fails to state a claim upon which relief can be granted. While a complaint does not need detailed factual allegations to survive a motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007). For the purposes of a motion to dismiss, a court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in favor of the nonmovant. Mallett v. Wisconsin Div. of Vocational Rehabilitation, 130 F.3d 1245, 1248 (7th Cir. 1997). Here, the Court accepts as true the allegations in Plaintiff's Complaint. Additionally, the Court notes that it may consider the Agreement itself in deciding this Motion to Dismiss. "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all

purposes," including consideration of a motion to dismiss. Fed. R. Civ. P. 10(c). Here, Plaintiff attached a copy of the written Agreement between itself and Defendant to the Complaint, as Exhibit A.

Before analyzing the Agreement, however, the Court must dispense with two preliminary matters. First, Defendant has not challenged the factual allegations regarding diversity. Because the Complaint alleges the parties are citizens of different states and the amount at issue exceeds $75,000.00, exclusive of interest and costs, the Court has jurisdiction under 28 U.S.C. § 1332. Second, the Court must make a choice of law. The Seventh Circuit has held that in a diversity case, if neither party raises a conflict of law issue, the Court should apply the law of the state in which it is located. Wood v. Mid-Valley Inc., 942 F.2d 425, 426 (7th Cir. 1991). Neither party has raised the issue here, so the Court will apply Illinois law.

The Court now will address the substance of the parties' dispute. The Court first considers Defendant's argument regarding the necessary elements of a valid contract and then its statute of frauds' argument.

I.  ELEMENTS OF A VALID CONTRACT

Defendant contends that the parties failed to reach a mutual understanding of Plaintiff's duties under the Agreement, and thus the

5

Agreement is not a valid contract. A contract "is sufficiently definite and certain to be enforceable if the court is enabled from the terms and provisions thereof, under proper rules of construction and applicable principles of equity, to ascertain what the parties have agreed to do." Morey v. Hoffman, 12 Ill.2d 125, 131, 145 N.E.2d 644, 647-48 (Ill. 1957). If, however, "the essential terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract." Academy Chicago Publishers v. Cheever, 144 Ill.2d 24, 30, 578 N.E.2d 981, 984 (Ill. 1991).

Here, the terms of the Agreement are not stated in great detail, but they provide that Plaintiff will conduct a 15 million dollar capital campaign over a four year period for a set fee from Defendant. Defendant argues that Paragraph Four, stating that "[d]ecisions in all matters of campaign strategy will be made jointly by the Korean War Veterans National Museum and Library and the Compass Group," demonstrates that Plaintiff's obligations are not established. Complaint, Exhibit A, Agreement ¶ 4. Defendant contends that the parties merely agreed to agree on their obligations at a later date.

Other sections of the Agreement reference specific tasks but impose

no duty on Plaintiff. For example, Paragraph Eight states: "The campaign materials designed by The Compass Group shall remain the exclusive property of The Compass Group." Id. ¶ 8. This provision suggests that Plaintiff would design materials, but it does not explicitly require Plaintiff to do so. Similarly, Paragraph Seven provides:

> The Korean War Veterans National Museum and Library will establish a campaign budget to cover costs related to the campaign, such as printing promotional materials; video tape production and duplication; meeting and special events, including luncheons and dinners; additional office supplies, postage, temporary clerical services and/or equipment rental, etc." Id. ¶ 7.

This provision implies that such tasks are part of a capital campaign, but it also does not explicitly state that Plaintiff will engage in those tasks.

Thus, while Defendant clearly agreed to pay Plaintiff a particular fee for its work, Plaintiff's only real obligation under the Agreement is "to provide these services," which references Defendant's desire to retain Plaintiff "to direct the conduct of a $15,000,000 capital campaign in support of the construction of a museum." Id. ¶¶ 1 & 3. The Agreement does not list particular tasks Plaintiff would be required to complete in the direction of a capital campaign, but it implies that Plaintiff would prepare promotional materials, conduct special events, and solicit those approved by

7

Defendant for contributions.

The failure to detail the full scope of the parties' duties is not fatal to an alleged contract, however. In Borys v. Rudd, an Illinois appellate court considered an agreement regarding the operation of an office building. Borys, 207 Ill.App.3d 610, 613, 566 N.E.2d 310, 312 (Ill.App. 1st Dist. 1990). The contract provided:

> William Rudd will furnish a management service for the building and will charge a fee based on the going market rate as determined by the average of Arthur Rubloff and Baird Warner for similar services. Janitorial services will be provided by personnel hired by William Rudd and on the payroll of Comprehensive Accounting and the partnership will be charged the going rate for janitorial services.
>
> William Rudd will provide an accounting service at a rate consistent with that charge [sic] to other clients for similar services.

Id., 566 N.E.2d at 312. Despite the failure to enumerate the scope of "a management service," "janitorial services," or "an accounting service," the appellate court recognized the agreement as a contract, not an unenforceable agreement to agree. Id. at 616, 566 N.E.2d at 314. In fact, the court found the contract to be unambiguous. Id. at 617, 566 N.E.2d at 314.

Similarly, in Circle Sec. Agency, Inc. v. Ross, the appellate court

recognized a sparsely detailed employment agreement as a contract. <u>Circle Sec. Agency, Inc.</u>, 107 Ill.App.3d 195, 437 N.E.2d 667 (Ill.App. 1st Dist. 1982). The agreement provided that after five years, the defendant, an insurance agent, could elect "to perform services to Circle on a consulting basis only, upon the terms and rate of compensation provided for such consulting services in Paragraph 3 hereof." <u>Id.</u> at 197, 437 N.E.2d at 668. The agreement failed to define or enumerate "consulting services," but the court did not find the omission significant and held that the defendant's refusal to travel for work was not a breach of contract. <u>Id.</u> at 205, 437 N.E.2d at 674.

Yet, at some point, an agreement contains so many significant ambiguities or omissions of material terms that a court must refuse to find that a contract exists. One such case is <u>Academy Chicago Publishers v. Cheever</u>, in which the plaintiff, Academy Chicago Publishers, and the defendant, the widow of author John Cheever, signed an agreement to publish a collection of Mr. Cheever's short stories. <u>Academy Chicago Publishers</u>, 144 Ill.2d 24, 578 N.E.2d 981 (Ill. 1991). The court noted a long list of omissions, ambiguities, unresolved essential terms and illusory terms in the agreement, stating:

9

> The agreement sheds no light on the minimum number of stories or pages necessary for publication of the collection, nor is there any implicit language from which we can glean the intentions of the parties with respect to this essential contract term. The publishing agreement is similarly silent with respect to who will decide which stories will be included in the collection. . . . [There is] [n]o date certain for delivery of the manuscript. No definition of the criteria which would render the manuscript satisfactory to the publisher either as to form or content. No date certain as to when publication will occur. No certainty as to style or manner in which the book will be published nor is there any indication as to the price at which such book will be sold, or the length of time publication shall continue, all of which terms are left to the sole discretion of the publisher.

Id. at 30, 578 N.E.2d at 984. The court found that the agreement was so deficient in its stated terms that even with implied obligations of good faith and standards of reasonableness, there was "no basis for determining when breach [had] occurred." Id.

The Agreement here is more like those in Borys and Circle Sec. Agency, Inc. than like that in Academy Chicago Publishers. The agreements in Borys and Circle Sec. Agency Inc. obligated the defendants to "furnish a management service," provide "janitorial services," "provide an accounting service," and "to perform services to Circle on a consulting basis." Borys, 207 Ill.App.3d at 613, 566 N.E.2d at 312; Circle Sec. Agency, Inc., 107 Ill.App.3d at 197, 437 N.E.2d at 668. These terms are no more detailed

than The Compass Group's obligation "to direct the conduct of a $15,000,000 capital campaign in support of the construction of a museum." Complaint, Exhibit A, Agreement, ¶ 1. But like those terms, the terms here of conducting a 15 million dollar capital campaign over a four year period and soliciting those approved by Defendant have sufficient meaning to provide a basis for determining whether the Agreement was broken.

Moreover, while the Agreement here omits a number of possible terms -- such as what type of campaign materials should be designed and what sort of meetings or special events should be arranged -- it explicitly states that all matters of campaign strategy should be decided jointly by the two parties, with the Defendant to control solicitations. This provision distinguishes the Agreement from that in Academy Chicago Publishers, which was silent on the key issue of who should determine which stories, and how many, should be included. Given the nature of an ongoing campaign, some issues are inherently unknowable at the time of contract formation.

The Court recognizes that some of the terms of the Agreement are vague, but proper rules of contract construction, such as the imposition of a reasonable time of performance or standards of good faith and fair dealing, will aid in interpretation. See Meyer v. Marilyn Miglin, Inc., 273 Ill.App.3d

11

882, 889, 652 N.E.2d 1233, 1238 (Ill.App. 1st Dist. 1995); Guel v. Bullock, 127 Ill.App.3d 36, 42, 468 N.E.2d 811, 816 (Ill.App. 1st Dist. 1984). Moreover, the Complaint alleges that Plaintiff is a fund-raising consultant, a position governed by Illinois statute. See 225 ILCS 460/1(e). Under Illinois law, a fund-raising consultant is allowed only to plan, advise, consult, and prepare materials for a solicitation of contributions. Id. If Plaintiff is found to be a covered entity, statutory law may aid in interpretation of the Agreement. Moreover, if the Court later finds some particular terms ambiguous, parol evidence may be considered. See Farnsworth v. Lamb, 6 Ill.App.3d 785, 789, 286 N.E.2d 74, 78 (Ill.App. 4th Dist. 1972)

The Court does not find the Agreement in the instant case to be so deficient as to support a ruling that there is no valid contract. Whether there is a relevant ambiguity due to indefiniteness of expression depends on where the heart of the dispute lies. This is not evident from the Complaint, which merely alleges that "Plaintiff performed all conditions precedent required by the contract." Complaint ¶ 11. At this stage, it is sufficient to say that there was a meeting of the minds that Plaintiff would conduct a 15 million dollar capital campaign for Defendant, over four years, for a

particular fee and that Defendant would approve prospects to be solicited, as well as the content and volume of any solicitation.  The Agreement is a valid, enforceable contract.

## II.     THE STATUTE OF FRAUDS

The Court also rejects Defendant's argument that the Agreement is invalid under the Illinois Statute of Frauds.  For agreements that will not be performed in less than one year, such as the one here, the statute of frauds requires a signed writing.  740 ILCS 80/1.  As required, there is a signed writing in this case.  See Complaint, Exhibit A, Agreement.

Defendant's statute of frauds' argument is actually only a reiteration of the assertion that the Agreement lacks essential elements.  To disaffirm the contract under the statute of frauds, Defendant relies on Mariani v. School Directors of Dist. 40, LaSalle County, in which the court found a writing insufficient to establish a contract.  Mariani, 154 Ill.App.3d 404, 506 N.E.2d 981 (Ill.App. 3$^d$ Dist. 1987).  The writing at issue in Mariani was the recorded minutes from a school board meeting at which the board voted to extend a three-year contract to the plaintiff.  Id. at 407, 506 N.E.2d at 983.  The minutes, however, noted only the vote, not the substance of the agreement itself.  Id., 506 N.E.2d at 983.  Defendant

13

quotes the <u>Mariani</u> court's finding that "[t]he writing in this case states only a proposed time of duration. Absent duties owed by the parties, compensation to be paid, and any other essential terms of the contract, the writing falls woefully short of satisfying statutory requirements." <u>Id.</u> The <u>Mariani</u> court went on to state that its "determination that the writing. . . was insufficient to satisfy the statute of frauds leaves the parties with an unenforceable contract. The *same facts and circumstances* also support our belief that the contract was invalid at its making due to the uncertainty of its terms." <u>Id.</u> at 408, 506 N.E.2d at 984 (emphasis added).

Thus, the <u>Mariani</u> court essentially held that a writing with terms so uncertain that it cannot be considered a contract also violates the statute of frauds. Defendant's statute of frauds' argument depends on the same reasoning discussed above, and the same analysis applies. For the same reasons, the Court finds no basis for invalidating this contract under the statute of frauds.

THEREFORE, Defendant Korean War Veterans National Museum and Library's Motion to Dismiss Plaintiff's Complaint (d/e 5) is DENIED. Defendant is directed to file its Answer on or before July 18, 2008. This matter is referred to the Magistrate for further scheduling.

IT IS THEREFORE SO ORDERED.

ENTER: June 24, 2008

    FOR THE COURT:

                                      s/ Jeanne E. Scott
                                      JEANNE E. SCOTT
                        UNITED STATES DISTRICT JUDGE